IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| J. CANUTE BARNES, W. KING BARNES, and ROBERT V. JONES, derivatively on behalf of all similarly situated shareholders of BARNES BANCORPORATION,<br><br>    Plaintiffs,<br><br>vs.<br><br>CURTIS H. HARRIS, NED H. GILES, DAVID N. BARNES, ROBERT L. THURGOOD, JERRY W. STEVENSON, MICHAEL D. PAVICH, GARY M. WRIGHT, DOUGLAS STANGER, and BARNES BANCORPORATION, a nominal defendant,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO DISMISS, GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, AND GRANTING THE FDIC'S MOTION TO DISMISS<br><br><br>Case No. 2:12-CV-1010 TS |

This matter is before the Court on named Plaintiffs J. Canute Barnes, W. King Barnes, and Robert V. Jones' ("Plaintiffs") Motion to Dismiss the FDIC; Defendants Curtis H. Harris, Ned H. Giles, David N. Barnes, Robert L. Thurgood, Jerry W. Stevenson, Michael D. Pavich,

1

Gary M. Wright, Douglas Stanger, and Barnes Bancorporation's ("Defendants") Rule 12(c) Motion for Judgment on the Pleadings Based on Plaintiff's Lack of Standing; and Intervenor FDIC-Receiver's ("FDIC") Motion to Dismiss the First Amended Complaint. For the reasons explained more fully below, the Court will deny Plaintiffs' Motion, grant Defendants' Motion, and grant the FDIC's Motion.

I. BACKGROUND

Plaintiffs brought this action as a shareholder derivative suit against certain officers and members of the board of directors of Barnes Bancorporation, alleging a breach of fiduciary duty. Nominal Defendant Barnes Bancorporation (the "Holding Company") is a registered bank holding company whose primary asset is its subsidiary, Barnes Banking Company (the "Bank"). The officers and directors of the Holding Company who are named as Defendants are also officers and directors of the Bank (the "Individual Defendants").

On January 15, 2010, the Bank was closed by the Utah Department of Financial Institutions and the FDIC was appointed as receiver for the Bank. Plaintiffs originally filed their Complaint on January 12, 2012, in Utah state court. On April 3, 2012, the FDIC filed a motion to intervene as a Plaintiff, claiming that: "(a) Plaintiff asserts derivative claims which belong exclusively to FDIC-Receiver; (b) numerous factual and legal determinations that must be made in this case are potentially binding in any ensuing case filed by FDIC-Receiver against Defendants; and (c) this case imperils the interests of others holding valid claims against Barnes Banking Company, on whose behalf FDIC-Receiver is empowered to act."[1]

---

[1] Docket No. 2-16, at 1-2.

On October 29, 2012, the state court granted the FDIC-Receiver's motion to intervene,[2] and on October 30, 2012, the FDIC-Receiver removed the case to this Court.[3] The next week, Plantiffs filed a motion to remand, arguing that the FDIC was not properly a party to this case as it had not filed a complaint or answer.[4] In its January 15, 2013 order, the Court rejected these arguments and found that it had proper jurisdiction over this case.[5]

II. LEGAL STANDARD

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."[6] The same standard is used when evaluating 12(b)(6) and 12(c) motions.[7]

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party.[8] Plaintiffs must provide "enough facts to state a claim to relief that is plausible

---

[2] Docket No. 2-35, at 2.

[3] Docket No. 2.

[4] Docket No. 7, at 2.

[5] Docket No. 23, at 4.

[6] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

[7] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002).

[8] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

on its face,"[9] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[10]  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[11]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[12]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[13]

In considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[14]  Thus,

> notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, "[a] district court may

---

[9]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[10]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11]*Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[12]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[13]*Iqbal*, 556 U.S. at 678-79 (alteration in original) (internal quotation marks and citations omitted).

[14]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[15]

### III.  DISCUSSION

A.  PLAINTIFFS' MOTION TO DISMISS

Plaintiffs' argue that the Court should dismiss the FDIC because the FDIC has not filed a complaint or answer, and because the FDIC has indicated that it no longer intends to pursue any claims in this matter. However, subsequent to the filing of Plaintiffs' Motion, the FDIC filed its own Motion to Dismiss Plaintiffs' Complaint, alleging that Plaintiffs' claims belong exclusively to the FDIC.[16]

It may be true that at one point the FDIC simply intended to withdraw from this matter. However, the FDIC has not done so. In fact, the FDIC's continued participation in scheduling conferences, briefing motions before the Court, and filing of its own Motion to Dismiss show that the FDIC is an active participant. In addition, the FDIC has shown that it intends to protect its interests in the claims it alleges belong solely to it, and to pursue them only as it deems appropriate.

As the FDIC has filed its own Motion to Dismiss, and is otherwise a fully participating party to this litigation, the Court will deny Plaintiffs' Motion.

---

[15]*Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[16]Docket No. 32.

B.        REMAINING MOTIONS

The FDIC's Motion to Dismiss and the Defendants' Motion for Judgment on the Pleadings are largely based on the same legal arguments, and they will be considered together.

The Federal Institution Reform, Recovery and Enforcement Act ("FIRREA") provides that the FDIC "shall, as conservator or receiver, and by operation of law, succeed to . . . all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution . . . ."[17]  Defendants and the FDIC argue that FIRREA gives the FDIC the exclusive right to pursue, or not pursue, Plaintiffs' claims.  Therefore, Plaintiffs' claims must be dismissed because they lack standing to bring them.

The question of whether a claim is a derivative claim belonging to the business entity itself or a direct claim belonging to a shareholder is a question of state law.[18]  Under Utah law, "[a]ctions alleging mismanagement, breach of fiduciary duties, and appropriation or waste of corporate opportunities and assets generally belong to the corporation, and therefore, a shareholder must bring such actions on its behalf."[19]  In a direct action, on the other hand, "the plaintiff can prevail without showing an injury to the corporation—the shareholder need show only an injury to him or herself that is distinct from that suffered by the corporation."[20]

---

[17] 12 U.S.C.A. § 1821(d)(2)(A).

[18] *See Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1200 (10th Cir. 2004) (analyzing whether or not a Plaintiff had alleged a derivative claim under state law).

[19] *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1280 (Utah 1998).

[20] *Id.*

Plaintiffs agree that FIRREA operates to prevent them from bringing claims against the officers and directors of the Bank. However, Plaintiffs have brought their Complaint against the officers and directors of the Holding Company, a separate entity from the Bank, and FIRREA does not prevent such suits. This matter is complicated by the fact that all of the Individual Defendants serve in dual roles as officers and directors of both the Bank and the Holding Company. Plaintiffs argue that regardless of the fact that the Individual Defendants are officers and directors of the Bank, they owe separate duties to the shareholders of the Holding Company, and that those duties were breached.

Although the Tenth Circuit has not considered the impact that FIRREA has on claims brought against a bank holding company when the officers and directors of the holding company and the bank are the same, several other courts have undergone this analysis. In *Lubin v. Skow*,[21] the trustee in bankruptcy of a bank holding company filed a complaint against the former officers of both a failed bank and its holding company. The bankruptcy trustee did not specify whether his claims were against the officers in their roles with the bank or the holding company, so the Eleventh Circuit analyzed the claims from both perspectives.[22] The court recognized three different avenues under which the trustee might be bringing its claims: 1) as a derivative suit against the bank's officers brought on behalf of the bank by the holding company as the bank's sole shareholder; 2) as a direct suit against the bank's officers brought on behalf of the holding

---

[21] 382 F. App'x 866, 869 (11th Cir. 2010).

[22] *Id.* at 870.

company; and 3) as a derivative suit against the officers of the holding company brought on behalf of the holding company.[23]

The court held that, under FIRREA, only the FDIC could bring derivative claims against the bank's officers, and dismissed all claims brought under the first avenue.[24] The court recognized that FIRREA did not prevent a direct claim against the bank's officers. Nevertheless, the court indicated that the trustee had

> only alleged a derivative claim disguised as a direct claim. The alleged harm to the Holding Company stems from the Bank officers' management of Bank assets. This harm is inseparable from the harm done to the Bank. That the Bank officers' poor business choices reduced the value of the Holding Company's investment does not alter the fact that the harm is decidedly a derivative one.[25]

Finally, the court recognized that the defendants owed separate duties in their roles as officers of the holding company, and that FIRREA did not apply to any duties they may have breached in that role.[26] However, the court found that "the Complaint still only alleges a breach of duty in their roles as officers of the Bank."[27] Implicit in the court's analysis is a recognition that, although the defendants owed separate duties to the holding company, they operated in a different role with the holding company than they did as officers and directors of the bank. In their roles as officers and directors of the holding company, the defendants simply did not have

---

[23]*Id.* at 870-72.

[24]*Id.* at 871.

[25]*Id.* at 871-72.

[26] *Id.* at 872.

[27]*Id.* at 873.

direct control over the operations and management of the bank, as they were limited to the powers the holding company had as a shareholder of the bank. Thus, the court expressly found that its opinion did not extend to potential allegations of misconduct in their holding company role, such as "failing to inform the Holding Company board about bank mismanagement or by failing to influence the Holding Company . . . to respond to this mismanagement . . . . Neither of these allegations, nor any other allegations regarding these defendant's conduct as Holding Company officers, appear in the Complaint."[28]

Shortly thereafter, in *In re Bank United Financial Corp.*,[29] a bankruptcy court examined claims brought against officers of a bank holding company in light of the *Lubin* precedent. In *Bank United*, the court rejected the FDIC's argument that "in every case where a bank holding company has suffered injuries due to a bank failure, any claims by the holding company caused by that failure can only be derivative claims, at least where the boards have the same, or almost the same, constituency."[30]

On review, the district court agreed that a plaintiff could avoid "the pitfalls of *Lubin* by drafting a proposed claim that not only targets officers of the holding company, but also that is based upon actions they took at the holding company level."[31] This was true "even if [the breach

---

[28]*Id.*

[29]442 B.R. 49, 52 (Bankr. S.D. Fla. 2010).

[30]*Id.* at 56-57.

[31]*Official Comm. of Unsecured Creditors of Bankunited Fin. Corp. v. Fed. Deposit Ins. Corp.*, No. 1:11-CV-20305, Docket No. 18, at 11 (Sep. 28, 2011 S.D. Fla).

was] also a breach of their duties to the Bank."[32] However, when the claim "stems from acts at the Bank level and from harm the Bank suffered" and does not allege "a unique or distinct action harm to the Holding Company," the claim is a derivative bank level claim that may only be brought by the FDIC.[33] "[I]n a case of overlapping officers, the 'focus must be on the nature of the act, or failure to act, as well as the injury caused, and not solely on who is the actor.'"[34]

Under this standard, the court found that claims that the holding company officers failed to "exercise vigilant control and attention to the financial accounting and reporting of the Holding Company and . . . the Bank, and [failed] to make sure the Bank was properly managed" were derivative claims that must be dismissed as claims that stemmed from mismanagement at the bank level.[35] However, claims that the holding company's officers failed to provide adequate information to the holding company's board, resulting in damages from a $34 million repurchase of holding company stock, the payment of over $2 million in dividends, and an $80 million capital infusion were determined not to be derivative claims, as they were claims based on conduct at the holding company level and alleged damages unique to the holding company.[36]

---

[32]*Id.*

[33]*Id.* at 5.

[34]*Id.* at 11 (quoting *Bank United*, 442 B.R. at 58).

[35]*Id.* at 5.

[36]*Id.* at 7 (citing *Bank United*, 442 B.R. at 59-60).

In the most recent case to consider these arguments, *In re Beach First National Bancshares, Inc.*,[37] the Fourth Circuit reached a similar result. Although the complaint included claims against the defendants only in their roles as officers and directors of the holding company, the court found that the claims were actually derivative claims belonging exclusively to the FDIC under FIRREA.[38] The court reasoned that, "[w]hile the Directors could, conceptually, have undertaken actions uniquely and separately harmful to [the holding company] (as opposed to the Bank), the Trustee has pled primarily causes of action for liability derivative of the alleged failures at the Bank level."[39]

The court went on to analyze specific claims, finding that the trustee lacked standing whenever the act or harm occurred primarily at the bank level.[40] The dismissed claims included claims based on the directors' responsibilities for oversight over the operations and management of the bank, including a failure to cause proper controls to be implemented, a failure to implement and enforce prudent lending and underwriting standards, and a failure to appoint qualified directors to the bank's board.[41] The court found that the injury at the holding company

---

[37] 702 F.3d 772 (4th Cir. 2012).

[38] *Id.* at 779.

[39] *Id.* at 777.

[40] *Id.* at 779-80.

[41] *Id.* at 778-79.

level was a result "of direct injury to the Bank when the Bank-level fiduciaries failed to properly operate the Bank."[42]

In the case presently before the Court, Plaintiffs assert that the Individual Defendants are being sued "as officers and directors of the [Holding] Company and not as officers and directors of the Bank."[43]  As reasoned in *Lubin*, *Bank United*, and *Beach First*, the Individual Defendants owed separate duties to the shareholders of the respective entities for which they were officers or directors.  Therefore, even though FIRREA gives the FDIC ownership of all derivative claims against the Bank's officers and directors, it does not prevent claims against the officers and directors of the Holding Company, despite the Individual Defendants' dual roles.  Similarly, the fact that the Individual Defendants are officers and directors of the Holding Company does not give Plaintiffs the ability to bring claims based on wrongdoing that occurred at the Bank level, regardless of how Plaintiffs word their claims.

Plaintiffs' allege that the Individual Defendants breached fiduciary duties they owed to the Holding Company.  Plaintiffs describe the alleged violations of the Individual Defendants in paragraph 22 of the Amended Complaint and its subparagraphs.  The Individual Defendants argue that Plaintiffs lack standing to bring all claims except for those contained in paragraphs 22(h)-(l) of the Amended Complaint.

---

[42]*Id.* at 779-80.

[43]Docket No. 21, at 2.

      1.      BANK LEVEL ALLEGATIONS

In Paragraphs 22(a)-(g), Plaintiffs allege that the Individual Defendants violated their fiduciary duties to the Holding Company by (a) permitting the Bank to extend credit in violation of laws, regulations, and policies, and failing to employ sound internal controls over underwriting policies; (b) permitting unsafe and unsound concentrations of credit, resulting in substantial losses to the Bank; (c) failing to heed the warnings and directives of the Bank's regulators, resulting in the closing of the Bank; (d) allowing the Bank to engage in risky CRE and ADC loans; (e) allowing the Bank to hire persons who lacked competence and experience into managerial positions; (f) failing to control the actions of Mr. Curtis H. Harris, or to question his decision regarding the number and size of high-risk loans; and (g) allowing the Bank to continue to pay excessive annual compensation to Mr. Harris.

Although Plaintiffs present these allegations as violations that occurred at the Holding Company (shareholder) level, it is clear that all of these alleged violations were committed by the officers and directors of the Bank. Had the officers and directors of the Bank been separate from the officers and directors of the Holding Company, Plaintiffs' allegations would have consisted of claims for failing to manage the operations of the Bank from the Holding Company level. However, the officers and directors at the Holding Company level simply do not have the ability to perform the actions alleged in the Complaint. It is telling that Plaintiffs must phrase these allegations in terms of "allowing" or "permitting" the Bank to make certain decisions or take certain actions, or for "failing to control" the actions of Bank officers.

It is the Bank's board of directors that has direct oversight over internal controls, management decisions, loan policies, hiring policies, and the other allegations in paragraphs 22(a)-(g). The officers and directors of the Holding Company are limited by the powers of the Holding Company, and those powers include only those of a shareholder of the Bank. The shareholder may have some authority to remove or replace bank directors if necessary, or to sell the shareholder's investment, but it does not have the authority to direct management decisions or perform the actions alleged in 22(a)-(g).

Not only did the underlying actions supporting these claims all occur at the Bank level, the harm did as well. The ultimate harm resulting from these allegations was the Bank's failure. Certainly, this hurt the Holding Company, but only as a flow-through from the losses incurred by the failure of the Bank. In short, the Holding Company's investment went sour. Plaintiffs have failed to allege any distinct or unique damages that were suffered by the Holding Company that were the result of actions taken at the Holding Company level. Therefore, the Court will dismiss Plaintiffs' claims with prejudice insofar as they relate to the allegations contained in paragraphs 22(a)-(g) of Plaintiffs' Amended Complaint.

    2.    HOLDING COMPANY LEVEL ALLEGATIONS

In paragraphs 22(h)-(l), Plaintiffs' allegations concern conduct that, on its face, appears to have occurred at the Holding Company level. However the nature of the damages suffered as a result of the conduct alleged is not clear from the pleadings.

In paragraphs 22(h) and 22(i), Plaintiffs allege that the Individual Defendants misappropriated a $9 million tax refund and an additional $265,000 from an unspecified source.

It is not clear if the $9 million tax refund and the $265,000 were assets of the Bank or the Holding Company, how the Individual Defendants misappropriated this money, or whether the damages were suffered only as a result of the Bank's failure or as a result of other specific conduct of the Individual Defendants.

In paragraphs 22(j)-(l), Plaintiffs allege that the Individual Defendants (1) retained and paid for a law firm to represent the Bank's officers and directors using company funds; (2) issued or acquired shares of Company stock for inadequate consideration between 2006 and 2010, with no details of these alleged transactions or why the consideration was inadequate; and (3) failed to convene regular shareholders meetings and advise Holding Company shareholders of important information during 2011 and 2012.  However, the damages alleged by Plaintiffs appear to be results of the Bank's failure rather than results of any of the conduct described in paragraphs 22(j)-(l).  Likewise, Plaintiffs have not described how this conduct was a breach of the Individual Defendants' fiduciary duties.

Without further factual development or explanation of how this conduct constitutes a breach of fiduciary duty or is related to the damages alleged, these claims do not meet the pleading standards set forth in *Iqbal*.  Therefore, the Court will dismiss these claims.  However, as paragraphs 22(h)-(l) appear to be alleging conduct that occurred at the Holding Company level, the Court will allow the Plaintiffs to re-plead the claims in paragraphs 22(h)-(l) in a Second Amended Complaint.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion to Dismiss the FDIC (Docket No. 24) is DENIED.  It is further

ORDERED that Defendants' Rule 12(c) Motion for Judgment on the Pleadings Based on Plaintiffs' Lack of Standing (Docket No. 30) and FDIC-Receiver's Motion to Dismiss the First Amended Complaint (Docket No. 32) are GRANTED.  Plaintiffs claims based on the allegations contained in paragraphs 22(h)-(l) of Plaintiffs' Amended Complaint are DISMISSED WITHOUT PREJUDICE.  Plaintiffs' claims based on the remaining allegations in the Amended Complaint are DISMISSED WITH PREJUDICE.  Plaintiff shall have twenty-one (21) days to file a Second Amended Complaint in accordance with the terms of this Order.  Failure to file a Second Amended Complaint will result in dismissal of this case.

DATED   May 13, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge