IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| J. CANUTE BARNES, W. KING BARNES, & ROBERT V. JONES, derivatively on behalf of all similarly situated shareholders of BARNES BANCORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>CURTIS H. HARRIS, NED H. GILES, DAVID N. BARNES, ROBERT L. THURGOOD, JERRY W. STEVENSON, MICHAEL D. PAVICH, GARY M. WRIGHT, DOUGLAS STANGER, & BARNES BANCORPORATION, a nominal defendant,<br><br>Defendants,<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for Barnes Banking Company,<br><br>Intervenor. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br><br>Case No. 2:12-CV-1010 TS |

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Second

Amended Complaint,[1] Intervenor's Motion to Dismiss Plaintiffs' Second Amended Complaint,[2]

Plaintiffs' Motion for Leave to Amend the Second Amended Complaint with a proposed Third

Amended Complaint,[3] and Intervenor's Motion for Leave to File a Supplemental Memorandum.[4]

---

[1]Docket No. 58.

[2]Docket No. 59.

[3]Docket No. 60.

For the reasons set forth below, the Court will grant Defendants' and Intervenor's Motions to Dismiss, will deny Plaintiffs' Motion, and will deny Intervenor's Motion for Leave to File a Supplemental Memorandum.

## I. BACKGROUND

Nominal Defendant Barnes Bancorporation is a registered bank holding company (the "Holding Company"). J. Canute Barnes, W. King Barnes, and Robert V. Jones (collectively, "Plaintiffs") are all shareholders of the Holding Company. Plaintiffs brought this derivative suit on behalf of the Holding Company against the following officers and directors of the Holding Company: Curtis H. Harris, Ned H. Giles, David N. Barnes, Robert L. Thurgood, Jerry W. Stevenson, Michael D. Pavich, Gary M. Wright, and Douglas Stanger (collectively, the "Individual Defendants"). Many of the Individual Defendants also served as directors and officers of the Holding Company's subsidiary bank, Barnes Banking Company (the "Bank").

On January 15, 2010, the Utah Department of Financial Institutions closed the Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as the Bank's receiver. All of the evidence before this Court supports the Individual Defendants' contention that the Bank was the Holding Company's sole asset. The Bank's closure immediately devalued the Holding Company's shares. Plaintiffs filed suit, alleging misconduct by those individuals serving in dual roles as officers and directors of both the Bank and the Holding Company. As the Bank's receiver, the FDIC intervened in the suit to protect its interests in the Bank's assets. Many of the claims initially asserted by Plaintiffs stemmed from alleged misconduct by the Bank's officers. The Court previously considered a motion to dismiss Plaintiffs' First Amended Complaint and

---

[4]Docket No. 78.

on May 13, 2013, the Court granted Plaintiffs leave to amend the Complaint to assert claims that do not stem from Bank level misconduct ("May 13 Order"). Specifically, the May 13 Order dismissed without prejudice claims based on the allegations in paragraphs 22(h)–(l) of the First Amended Complaint and dismissed with prejudice claims based on the remaining allegations.[5]

Plaintiffs filed a Second Amended Complaint on June 3, 2013.[6] Plaintiffs repleaded their breach of fiduciary duty claims against the Individual Defendants in their role as directors and officers of the Holding Company. The Individual Defendants and the FDIC each filed separate Motions to Dismiss, arguing that Plaintiffs simply repackaged the Bank level claims that the Court had dismissed with prejudice, and that Plaintiffs' Second Amended Complaint once again fails to state a claim for relief.

Before the Motions to Dismiss the Second Amended Complaint were fully briefed, Plaintiffs filed a Motion for Leave to Amend and attached a proposed Third Amended Complaint.[7] The Third Amended Complaint narrows Plaintiffs' claims to theories based on failure to disclose information to the Holding Company's shareholders and waste of corporate assets. The Individual Defendants and the FDIC oppose Plaintiffs' Motion for Leave to Amend.

On September 13, 2013, Plaintiffs filed a Request for Oral Argument.[8] The Individual Defendants objected to the form of Plaintiffs' filing, arguing that Plaintiffs introduced new arguments in the Request for Oral Argument memorandum without obtaining leave to file a

---

[5] Docket No. 52, at 16.

[6] Docket No. 53.

[7] Docket No. 60.

[8] Docket No. 74.

surreply.  On November 14, 2013, the Court heard oral argument on the pending Motions.  At the hearing, Plaintiffs' arguments included those advanced for the first time in the Request for Oral Argument.  Following the hearing, the FDIC filed a Motion for Leave to File a Supplemental Memorandum[9] to respond to Plaintiffs' new arguments, particularly those advanced in the hearing.

## II.  MOTION TO DISMISS

On a 12(b)(6) motion to dismiss, the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."[10] "[C]ourts must consider the complaint in its entirety, . . . [including] documents incorporated into the complaint by reference . . . ."[11]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[12] But, the Court "will disregard conclusory statements."[13]

The Individual Defendants and the FDIC argue that Plaintiffs' Second Amended Complaint should be dismissed for exceeding the Court's May 13 Order and because Plaintiffs still fail to state a claim for relief.  Plaintiffs argue that the Second Amended Complaint alleges additional factual support for their claims, such that dismissal is not warranted.

---

[9]Docket No. 78.

[10]*Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

[11]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[12]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[13]*Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

The Second Amended Complaint asserts a claim for breach of fiduciary duty based on five theories: (1) conflict of interest, (2) breach of care and loyalty to the Holding Company, (3) self-dealing by Defendant Harris, (4) improper dividend payments while failing to disclose the risks facing the Bank, and (5) corporate waste of a $9 million tax refund and $265,000 of the Holding Company's assets.

A.     CONFLICT OF INTEREST

Plaintiffs' Second Amended Complaint alleges that the Individual Defendants had a conflict of interest that caused the Individual Defendants to breach their fiduciary duty by failing to adequately investigate and review the Bank's mismanagement, including calling a special shareholder meeting of the Bank (as the Bank's sole shareholder) to remove the Bank's directors and officers.  Plaintiffs also allege that the Individual Defendants breached their fiduciary duty to the Holding Company by failing to investigate and remove themselves from the Holding Company's board of directors and by blocking the appointment of a Barnes family member, Mr. Peers, to the Holding Company's board.

The Individual Defendants and the FDIC argue that Plaintiffs have simply rephrased the same Bank level claims already dismissed by the May 13 Order and that these claims should be dismissed because they rely upon allegations of the Individual Defendants' failure to correct mismanagement at the Bank level and allege harm suffered by the Holding Company only as a flow-through from the Bank's failure.

The Federal Institution Reform, Recovery, and Enforcement Act ("FIRREA") provides that the FDIC "shall, as conservator or receiver, and by operation of law, succeed to . . . all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder,

member accountholder, depositor, officer, or director of such institution with respect to the institution and assets of the institution."[14] The Court's May 13 Order dismissed with prejudice any claims based on misconduct at the Bank level because Plaintiffs lack standing to assert such claims under FIRREA.

But, as the Court explained in the May 13 Order, "even though FIRREA gives the FDIC ownership of all derivative claims against the Bank's officers and directors, it does not prevent claims against the officers and directors of the Holding Company, despite the Individual Defendants' dual roles."[15] The FIRREA analysis gets more complicated, however, when considering claims against the Individual Defendants who served as directors and officers of both the Bank and the Holding Company once the Bank entered receivership with the FDIC. Under the framework discussed in the Court's May 13 Order, FIRREA does not prevent derivative suits against bank holding company directors and officers so long as the suits are based on (1) a breach of fiduciary duty to the bank holding company[16] and (2) harms uniquely suffered by the bank holding company.[17]

Even if the Court accepts that Plaintiffs' conflict of interest theory properly pleaded a breach of fiduciary duty owed to the Holding Company, Plaintiffs' claim still fails.

Plaintiffs fail to assert a unique harm suffered by the Holding Company. Rather, the asserted harms to the Holding Company all flow from the Bank's closure. Plaintiffs assert that if

---

[14]12 U.S.C. § 1821(d)(2)(A) (2012).

[15]Docket No. 52, at 12.

[16]*Lubin v. Skow*, 382 F. App'x 866, 873 (11th Cir. 2010).

[17]*In re Beach First Nat'l Bancshares, Inc.*, 702 F.3d 772, 777–79 (4th Cir. 2012).

the Individual Defendants had called a Bank shareholder meeting to remove themselves as directors and officers of the Bank, then the mismanagement at the Bank could have been corrected. Similarly, Plaintiffs assert that if the Individual Defendants had investigated and removed themselves as directors and officers of the Holding Company or not blocked the appointment of Mr. Peers to the Holding Company's board, then the Holding Company could have assessed, addressed, and implemented the changes necessary to ensure continued operation of the Bank. These harms ultimately derive from the Bank's closure. Because these claims do not plead damages unique to the Holding Company, the claims belong to the FDIC under FIRREA. Accordingly, the Court will dismiss the breach of fiduciary claim in Plaintiffs' Second Amended Complaint.

B.     BREACH OF CARE & LOYALTY

Plaintiffs' Second Amended Complaint alleges that the Individual Defendants' conflict of interest also caused the Individual Defendants to breach their duty of care and loyalty to the Holding Company by failing to abide by the terms of a written agreement between the Federal Reserve Bank, the Bank, and the Holding Company. Plaintiffs allege that the Bank was closed as a direct result of the Holding Company's failure to abide by the terms of the agreement, which immediately devalued the Holding Company's shares.

Even if the Court were to accept that the Holding Company's failure to abide by the terms of the agreement constituted a breach of the duty of care and loyalty, Plaintiffs have failed to allege a harm that is unique to the Holding Company that did not simultaneously occur at the Bank level. Plaintiffs' breach of care and loyalty claim suffers from the same defect as the breach of fiduciary duty claims discussed above: the harm alleged is ultimately the Bank's

closure. For this reason, the Court will dismiss the claim for breach of the duty of care and loyalty in Plaintiffs' Second Amended Complaint.

C.     SELF-DEALING

Plaintiffs assert a claim for self-dealing against Defendant Harris because he invited Holding Company shareholders to sell their stock back to the Holding Company in November 2006; sold an unknown number of his own shares in early 2009; immediately refused a previously approved loan to a member of the Barnes family because it was secured by Holding Company stock, which had no value, according to Defendant Harris; and in December 2009, denied that he had sold any of his Holding Company shares in the prior year.

The Individual Defendants argue that this claim should be dismissed because Plaintiffs' theory depends on the loss in Holding Company share value caused by the Bank's failures. The Individual Defendants also argue that Plaintiffs' theory implies that Defendant Harris breached the terms of an agreement not to sell his stock, even though the agreement was signed after Defendant Harris completed the sale. Plaintiffs have not challenged the Individual Defendants' arguments. Moreover, Plaintiffs removed this claim and the associated factual allegations in their proposed Third Amended Complaint. Based on the foregoing, the Court will dismiss this claim.

D.     IMPROPER DIVIDEND PAYMENTS

Plaintiffs allege that the Individual Defendants breached their fiduciary duty by committing corporate waste when they approved improper payments of Holding Company shareholder dividends from 2006–2008—a time when the Individual Defendants were on notice that the Holding Company's asset, the Bank, was in poor condition and that such dividends were

8

not warranted. This claim and the allegations upon which it is based were not included in the First Amended Complaint.

Plaintiffs argue that *FDIC v. Mahajan*[18] supports their position that claims for improper dividend payments are valid when dividend payments are approved despite notice that the financial condition of the company is poor. This is a correct, though incomplete, reading of that case. *Mahajan* involved claims asserted by the FDIC against directors of a bank,[19] not a derivative claim asserted by the shareholders of a bank holding company after the bank holding company's sole asset, a bank, had failed. This is an important distinction. In *Mahajan*, the bank was unsound because it was experiencing "understated loss reserves and overstatement of income" while the directors and officers were simultaneously authorizing dividend payments and expense payments for a director's wedding, a director's wife's legal fees, and the like.[20] The *Mahajan* court explained that the FDIC sufficiently pleaded breaches of fiduciary duty and waste of corporate assets when the bank's directors and officers approved these payments despite their knowledge that the bank was in a poor financial state.

In the case before this Court, Plaintiffs allege that the Individual Defendants breached their fiduciary duty to the Holding Company by authorizing dividend payments to Holding Company shareholders at a time when the Individual Defendants were aware of the troubling financial condition of the Holding Company's sole asset, the Bank. Plaintiffs do not provide any specific factual allegations supporting the conclusion that the dividend payments were made to

---

[18]No. 11 C 7590, 2012 WL 3061852 (N.D. Ill. July 26, 2012).

[19]*Id.* at *1, *7.

[20]*Id.* at *7.

the detriment of the Holding Company. Rather, Plaintiffs' allegations in this regard are conclusory. For example, Plaintiffs allege that the Individual Defendants "ignored the economic indicators," and "were more concerned with declaring a dividend . . . than actually assuring that the Holding Company's assets, including the Bank, were properly managed."[21] Similarly, Plaintiffs allege that the Individual Defendants "misrepresented and minimized the risks the Holding Company was facing" while "ignoring the warning signs" by authorizing a "dividend to Holding Company shareholders which should not have been paid out" when the Individual Defendants should have been "dealing with the many financial and management issues facing the Holding Company."[22]

Even if the Court accepts that the dividend payments weakened the financial condition of the Holding Company, any such weakening was a downstream effect of the weakening of the financial condition of the Bank, and not a distinct harm. The Holding Company's dividends could only derive from its sole asset, the Bank. Without additional factual allegations, it is not plausible that the harm suffered by the Holding Company stemmed from the payment of dividends; rather, the Holding Company's harms stemmed from the failure of its sole asset, the Bank. Because Plaintiffs failed to allege a harm that is unique to the Holding Company, the Court will dismiss the improper dividend payment claim in Plaintiffs' Second Amended Complaint.

---

[21] Docket No. 53, at 12.

[22] *Id.* at 13.

E.    CORPORATE WASTE

The fifth theory in Plaintiffs' Second Amended Complaint alleges that the Individual Defendants breached their fiduciary duty by committing corporate waste by (1) failing to obtain the Holding Company's portion of the $9 million tax refund; and (2) misappropriating $265,000 of Holding Company funds for, at least, the Individual Defendants' insurance coverage and to retain counsel to represent the Individual Defendants in their capacity as directors and officers of the Bank.

1.    *$9 Million Tax Return*

The Individual Defendants and the FDIC argue that Plaintiffs lack standing to bring their claim regarding the $9 million tax return.  Plaintiffs argue that they are entitled to at least a portion of the return and that they should be given the opportunity to proceed with discovery to determine how much of the $9 million tax return should be paid to the Holding Company.

The linchpin of this argument is the seminal case of *In re Bob Richards Chrysler-Plymouth Corp., Inc.*,[23] where the Ninth Circuit stated the now widely accepted default rule: "Absent any differing agreement, . . . a tax refund resulting solely from offsetting the losses of one member of a consolidated filing group against the income of that same member in a prior or subsequent year should inure to the benefit of that member."[24]  The question then is whether the consolidated tax return resulted solely from the losses of the Bank or whether the Holding Company suffered independent losses that could entitle the Holding Company to a portion of the tax return.  In fact, the Court's May 13 Order explicitly granted Plaintiffs leave to amend their

---

[23]473 F.2d 262 (9th Cir. 1973).

claim arising from the $9 million tax refund because it was "not clear if the $9 million tax refund . . . w[as an] asset[] of the Bank or the Holding Company . . . or whether the damages were suffered only as a result of the Bank's failure."[25]

At oral argument, Plaintiffs asserted that the Bank was the Holding Company's primary asset—consistent with their allegations in the multiple complaints filed in this case[26]—and that it was unknown whether the Bank was the Holding Company's sole asset. Plaintiffs also asserted that if the Holding Company had other assets, those assets may have created losses entitling the Holding Company to a portion of the tax return. Implicitly, if the Bank was the Holding Company's sole asset, then the entire tax return would inure to the Bank.

The Individual Defendants responded by directing the Court's attention to the demand letter which ultimately initiated this derivative shareholder suit, and had been attached as Exhibit A to the First Amended Complaint.[27] The demand letter was drafted on August 15, 2011, on behalf of J. Canute Barnes and delivered to the Holding Company's registered agent, Michael Pavich. The demand letter states, "The [Holding] Company's sole asset is Barnes Banking Company . . . ."[28]

Further, the Court notes that Plaintiffs are in a unique position to know whether the Holding Company had other assets than the Bank. Despite that unique position, Plaintiffs have

---

[24]*Id.* at 265; *see also In re Franklin Sav. Corp.*, 182 B.R. 859, 862 (D. Kan. 1995) (acknowledging the general rule from *Bob Richards*).

[25]Docket No. 52, at 15.

[26]Docket No. 20, at 2, 5, 7, 19; Docket No. 53, at 2, 5; Docket 60-2, at 19.

[27]Docket No. 20-1.

never produced any evidence, or plausible allegation, of the existence of other assets.  Based on

Plaintiffs' own admission in the demand letter and the absence of any plausible evidence or

allegation to the contrary, the Court concludes that the Holding Company's sole asset was the

Bank and that the entire tax return could only derive from the Bank's losses.  The Holding

Company, therefore, is not entitled to any portion of the return.  Based on the foregoing, the

Court will dismiss the $9 million tax return claim in Plaintiffs' Second Amended Complaint.

### 2.  *Misappropriation of the Holding Company's $265,000*

Plaintiffs allege that $265,000 of the Holding Company's assets were used to pay

insurance premiums for the Holding Company's directors and officers and to retain legal counsel

to represent the Holding Company's directors and officers in their capacity as the Bank's

directors and officers.  Plaintiffs' misappropriation theory in the First Amended Complaint was

dismissed without prejudice and with leave to amend to allow Plaintiffs the opportunity to allege

additional facts necessary to satisfy the *Iqbal* standard.  Plaintiffs' claim in the Second Amended

Complaint regarding the Individual Defendants' misappropriation of the Holding Company's

assets remains substantively unchanged from the First Amended Complaint.

At oral argument, Plaintiffs argued that the factual allegations needed to satisfy *Iqbal* are

simply unavailable to Plaintiffs without discovery.  Plaintiffs do not know exactly how the

Holding Company's $265,000 was misappropriated and assert that this information is

particularly within the Defendant's control.  Moreover, Plaintiffs argued, it would be unfair to

dismiss this claim under *Iqbal* in such a situation.  Plaintiffs directed the Court to a Second

---

[28]*Id.* at 3.

Circuit opinion written by then-Judge—and now, Justice—Sotomayor, *Boykin v. KeyCorp.*[29]

Plaintiffs argued that *Boykin* stands for the proposition that dismissal under *Iqbal* for deficient factual allegations is not warranted where the relevant facts are particularly within Defendant's control. Instead, Plaintiffs argued, *Boykin* allows Plaintiffs to satisfy *Iqbal* by pleading necessary facts on information and belief—even under the heightened pleading standards imposed by Rule 9(b). Plaintiffs' argument fails to rescue its misappropriation claim for three reasons.

First, to the extent that *Boykin* relies on the *Iqbal* pleading standard, it is not necessarily the same *Iqbal* standard that currently governs federal courts. Rather, *Boykin* was decided before the Second Circuit's decision in *Iqbal v. Hasty*[30] was reviewed and reversed by the U.S. Supreme Court in *Ashcroft v. Iqbal*—the seminal case that helped to clarify the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*. In fact, *Boykin* was decided nearly three months before the Supreme Court granted the petition for a writ of certiorari in *Ashcroft v. Iqbal*.[31] In *Boykin*, the Second Circuit acknowledged the uncertainty of the post-*Twombly* pleading standard and reiterated the Second Circuit's interpretation of that standard, as articulated in *Iqbal v. Hasty*: Rule 8 imposes a "flexible 'plausibility standard,' which obliges the pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."[32]

---

[29] 521 F.3d 202 (2d Cir. 2008).

[30] 490 F.3d 143 (2d Cir. 2007).

[31] *Compare Boykin*, 521 F.3d at 202 (issuing opinion on March 27, 2008), *with Ashcroft v. Iqbal*, 554 U.S. 902 (2008) (granting petition for writ of certiorari on June 16, 2008).

[32] *Iqbal v. Hasty*, 490 F.3d at 157–58.

On review, the Supreme Court acknowledged, but did not adopt, the Second Circuit's conceptualization of flexibility in the plausibility standard. Instead, the Supreme Court reiterated *Twombly*'s requirement that complaints must have "facial plausibility" to survive a motion to dismiss[33] while acknowledging that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[34] To resolve this Motion, this Court need not address any possible conceptual differences between the Second Circuit's and the Supreme Court's articulation of the *Iqbal* pleading standard. But to the extent that Plaintiffs' argument urges this Court to employ potential flexibility of the plausibility standard to permit Plaintiffs to proceed on their misappropriation claim in the absence of factual allegations because those relevant facts are in Defendant's control, the Court declines to do so based on the controlling articulation of the pleading standard in *Ashcroft v. Iqbal*. Plaintiffs have not pleaded facts sufficient to nudge their misappropriation claim from the possible to the plausible.

Second, *Boykin*'s pleading-standard analysis expressly rests on guidance from the Supreme Court in *Erickson v. Pardus*.[35] In *Erickson*, the Supreme Court reversed the Tenth Circuit's use of a heightened pleading standard in a § 1983 claim. Central to the Supreme Court's reasoning was the fact that *Erickson* involved a pro se plaintiff, who the Supreme Court recognized should be held to "less stringent standards."[36] Similarly, *Boykin* involved a pro se

---

[33]*Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

[34]*Id.* at 679.

[35]551 U.S. 89 (2007) (per curiam).

[36]*Id.* at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

plaintiff, who only obtained counsel after the Second Circuit appointed an attorney to represent her on appeal. When summarizing its rationale for holding that the pro se plaintiff's complaint satisfied the pleading standard, the *Boykin* court explicitly relied on *Erickson* and explained that "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."[37] The animating principle underlying both *Erickson* and *Boykin* is missing in the case before this Court. Plaintiffs have been represented throughout the proceedings by highly qualified counsel. Therefore, to the extent that Plaintiffs' argument urges this Court to assess their misappropriation claim in accordance with the standard applied in *Boykin*, the Court declines to do so.

Third, Plaintiffs' incorrect reading of *Boykin* would be unavailing. Plaintiffs have not alleged additional facts on information and belief that would nudge their misappropriation claim across the line from possible to plausible. Plaintiffs' allegations regarding misappropriation of the $265,000 to pay for the Individual Defendants' insurance premiums and legal representation have remained substantively unchanged since the First Amended Complaint and were not supplemented in the Second Amended Complaint or Proposed Third Amended Complaint.[38] Plaintiffs have not pleaded facts showing how the Individual Defendants breached their fiduciary duty by using Holding Company funds to pay insurance premiums for the Holding Company's directors and officers. Likewise, Plaintiffs have not pleaded additional facts regarding the payment of legal counsel, and particularly, how this conduct resulted in damages distinct from

---

[37]*Boykin*, 521 F.3d at 216.

[38]*Compare* Docket No. 21, at 9–10, *with* Docket No. 53, at 14.

the Bank's failure.  Having added little to their misappropriation allegations, Plaintiffs again fail to sufficiently plead a plausible claim under *Iqbal*.

Based on the foregoing, the Court will dismiss the misappropriation claim in Plaintiffs' Second Amended Complaint.

## III.  MOTION TO AMEND

Plaintiffs are beyond the point where they may file an amended complaint as a matter of course and the Individual Defendants and the FDIC challenge the request for leave to file the Third Amended Complaint.  The Federal Rules of Civil Procedure dictate that "[t]he court should freely give leave [to amend] when justice so requires."[39]  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"[40]

The Individual Defendants argue that the Court should not grant leave to amend because the Third Amended Complaint was filed in bad faith and with undue delay, will cause prejudice, and because the Third Amended Complaint fails to cure the Second Amended Complaint's deficiencies.  Similarly, the FDIC argues that amendment would be futile.

## A.  BAD FAITH & FAILURE TO CURE DEFICIENCIES

The Individual Defendants argue that Plaintiffs' request to file a Third Amended Complaint while the Motions to Dismiss the Second Amended Complaint are still pending does not meet the standard of good faith.  The Individual Defendants also argue that Plaintiffs' Second

---

[39]Fed. R. Civ. P. 15(a)(2).

[40]*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Amended Complaint and proposed Third Amended Complaint flaunt the Court's May 13 Order by continuing to allege claims based on Bank level misconduct, and that Plaintiffs are simply repackaging those claims to avoid dismissal.

The Tenth Circuit has upheld a finding of bad faith and dilatory motive in the context of a Rule 15 motion where the plaintiff's amendment was "a rather lightly veiled attempt to avoid the allegations . . . and admissions which were made in previous complaints, which [were] unfavorable to the plaintiff under the legal theories now expounded."[41] The United States District Court for the District of Colorado recently noted that there is "little guidance in the Tenth Circuit as to what constitutes bad faith for purposes of a Rule 15 motion," and instead found guidance in the advisory committee's notes to the rules.[42] Specifically, the court noted that the committee "emphasizes the importance of allowing amendment to correct deficiencies in the pleading, which may be raised by a 12(b)(6) motion, and frame the issues to be decided."[43]

Plaintiffs' Third Amended Complaint does not appear to be an attempt to avoid allegations or omissions made in a prior pleading. Instead, the Second Amended Complaint suffers from serious deficiencies and the Third Amended Complaint appears to be a good faith—albeit unsuccessful—attempt by Plaintiffs to frame the issues by narrowing and focusing their claims on the Holding Company. Therefore, the Court finds that the Motion for Leave to Amend was not filed in bad faith.

---

[41]*Ayon v. Gourley*, 185 F.3d 873, 1999 WL 516088, at *3 (10th Cir. 1999) (unpublished table decision) (omission in original).

[42]*First Am. Mortg., Inc. v. First Home Builders of Fla.*, No. 10-CV-00824, 2010 WL 5230902, at *3 (D. Colo. Dec. 15, 2010).

[43]*Id.*

B.     UNDUE DELAY & PREJUDICE

The Individual Defendants argue that the piecemeal fashion in which Plaintiffs have pleaded has resulted in undue delay and prejudice.  The Individual Defendants direct the Court's attention to exhibits attached to the Third Amended Complaint and argue that these documents were available to Plaintiffs when the case was initiated in January 2012.

The Court dismissed Plaintiffs' First Amended Complaint on May 13, 2013.  Plaintiffs filed the Second Amended Complaint on June 3, 2013.  The Individual Defendants and the FDIC filed Motions to Dismiss on June 28, 2013, and July 3, 2013, respectively.  Almost immediately thereafter, on July 5, 2013, Plaintiffs filed their Motion for Leave to Amend and attached the proposed Third Amended Complaint.  The Third Amended Complaint appears to reflect a good faith attempt to respond to the Court's May 13 Order, noticeably narrows Plaintiffs' claims, and provides some expanded factual allegations that attempt to frame the claims around conduct and harm at the Holding Company level.  Moreover, as reflected by the legal authority this Court relied upon in its May 13 Order, Plaintiffs face understandable pleading challenges in light of restrictions imposed by FIRREA.  By quickly filing the pending Motion for Leave to Amend, Plaintiffs demonstrated that they are attempting to avoid undue delay and to minimize prejudice, even though the Third Amended Complaint would be the fourth pleading filed by Plaintiffs in this case.

Based on the foregoing, the Court finds that Plaintiffs' Motion for Leave to Amend was not unduly delayed and that the Individual Defendants have failed to demonstrate sufficient prejudice that warrants denying the Motion on that ground.

C.     FUTILITY

The central argument raised by the Individual Defendants and the FDIC in opposing

Plaintiffs' Motion for Leave to Amend is that the Third Amended Complaint would be a futile

attempt to cure fatal deficiencies in the Second Amended Complaint.

"A proposed amendment is futile if the complaint, as amended, would be subject to

dismissal."[44]  "The futility question is functionally equivalent to the question whether a

complaint may be dismissed for failure to state a claim . . . ."[45]

When evaluating whether a proposed amendment is futile, therefore, the Court must

"accept as true all well-pleaded factual allegations . . . and view these allegations in the light

most favorable to the plaintiff."[46]  The proposed amended complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[47]  But,

the Court "will disregard conclusory statements."[48]

In the Second Amended Complaint, Plaintiffs pleaded their breach of fiduciary duty

claims against the Individual Defendants—in the Individual Defendants' role as directors and

officers of the Holding Company—under five theories: conflict of interest, breach of care and

loyalty to the Holding Company, self-dealing by Defendant Harris, improper dividend payments

while failing to disclose the risks facing the Bank, and corporate waste of a $9 million tax refund

---

[44]*Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (quoting *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)).

[45]*Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

[46]*Smith*, 561 F.3d at 1098.

[47]*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

and $265,000 of the Holding Company's assets.  The proposed Third Amended Complaint combines theories one, two, and four into a single count: breach of fiduciary duty to the Holding Company for failing to provide critical information or hold meetings to remove the Bank's or Holding Company's management.  The fifth theory is now labeled as count two of the proposed Third Amended Complaint: breach of fiduciary duty to the Holding Company for wasting corporate assets, including the $9 million tax refund, $265,000 of the Holding Company's assets, and improper dividend payments.  Plaintiffs have abandoned the self-dealing theory in the proposed Third Amended Complaint.

### 1.  *Failure to Disclose Information and Hold Meetings*

The first count of Plaintiffs' proposed Third Amended Complaint reframes the allegations of Bank level misconduct that formed the principal thrust of the prior pleadings in terms of misconduct at the Holding Company level.  But rather than seeking monetary damages, Plaintiffs' Third Amended Complaint seeks declaratory relief that the Individual Defendants breached their fiduciary duty and to have the Individual Defendants removed from the Holding Company's board.  Plaintiffs also request that the Court appoint a receiver until the Holding Company can elect new directors.

While Plaintiffs reframe their allegations regarding the breach of fiduciary duty to more directly target the Individual Defendants' conduct as it relates to the Holding Company, Plaintiffs have not alleged additional facts regarding the harms suffered by the Holding Company.  Instead, Plaintiffs plead additional facts regarding the FDIC's findings regarding the

---

[48] *Khalik*, 671 F.3d at 1191.

mismanagement of the Bank;[49] a more clearly articulated assertion that the Individual Defendants authorized the payment of dividends to give Holding Company shareholders a false sense of security about the Holding Company's sole asset, the Bank;[50] specific allegations regarding the Holding Company's failure to satisfy the terms of the written agreement between the Federal Reserve Bank, the Bank, and the Holding Company;[51] and more details of Mr. Peers's blocked appointment to the Holding Company's board of directors.[52] None of these allegations provide a factual basis for concluding that the Holding Company suffered a harm distinct from the Bank's closure. The FDIC's findings regarding the Bank's mismanagement explicitly describe conduct and harm that occurred at the Bank level. The remaining allegations all describe conduct that prevented the Holding Company from intervening in the Bank's management, which ultimately harmed the Holding Company by causing the Bank's closure. As such, these allegations are inextricably tied to the Bank's closure and do not cure the deficiencies in Plaintiffs' prior pleadings. Moreover, Plaintiffs do not cure their failure to plead a unique harm suffered by the Holding Company by requesting equitable relief rather than monetary damages. Therefore, the Court finds that amending this theory with count one of Plaintiffs' proposed Third Amended Complaint would be futile.

---

[49]Docket No. 60-2, at 6–8, 10.

[50]*Id.* at 11–12.

[51]*Id.* at 12–13.

[52]*Id.* at 13–14.

*2.    Corporate Waste*

The second count of Plaintiffs' proposed Third Amended Complaint alleges corporate waste of the $9 million tax return and $265,000 of Holding Company assets, and also asserts that the Individual Defendants committed waste by authorizing improper dividend payments. Although Plaintiffs have reframed their corporate waste theory by reorganizing and rephrasing the relevant allegations, they are substantively unchanged from the Second Amended Complaint. Plaintiffs argue that the factual allegations are bolstered by the Holding Company's board meeting minutes that identify the $9 million tax return and $265,000 of Holding Company assets and are attached to the Third Amended Complaint. The exhibits, however, do not provide additional facts that support the plausibility of Plaintiffs' claim. Given the procedural posture of this case, the Court had already taken these facts—as alleged in the Complaint—to be true. Therefore, the Court finds that amending this theory with count two of Plaintiffs' proposed Third Amended Complaint would be futile.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion to Dismiss (Docket No. 58) is GRANTED. It is further

ORDERED that Intervenor's Motion to Dismiss (Docket No. 59) is GRANTED. It is further

ORDERED that Plaintiff's Motion for Leave to Amend (Docket No. 60) is DENIED. It is further

ORDERED that Intervenor's Motion for Leave to File a Supplemental Memorandum (Docket No. 78) is DENIED.

The Clerk of Court is directed to close this case forthwith.

DATED   December 19, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge